**IN THE UNITED STATES BANKRUPTCY COURT FOR THE
EASTERN DISTRICT OF TENNESSEE**

In re

JEFFREY LEE COOPER
a/k/a JEFFREY L. COOPER
a/k/a JEFFREY COOPER
d/b/a SHILO MARKET
a/k/a JEFF COOPER

                Debtor

LANA COOPER

                Plaintiff

v.

JEFFREY LEE COOPER

                Defendant

Case No.  09-30751

Adv. Proc. No.  09-3068

**M E M O R A N D U M**

APPEARANCES:   T. WOOD SMITH, ESQ.
                           416 West Main Street
                           Greeneville, Tennessee  37743-4824
                           Attorney for Plaintiff

                        DOUGLAS L. PAYNE, ESQ.
                           401 West Irish Street
                           Greeneville, Tennessee  37743
                           Attorney for Defendant

**RICHARD STAIR, JR.
UNITED STATES BANKRUPTCY JUDGE**

This adversary proceeding is before the court upon the Complaint to Determine the Dischargeability of A Debt (Complaint) filed by the Plaintiff on May 26, 2009, seeking a determination that a debt owed to Andrew Johnson Bank secured by real property of the Plaintiff is nondischargeable under 11 U.S.C. § 523(a)(2)(A) and (15) (2006).  The Defendant filed an Answer to Complaint to Determine the Dischargeability of a Debt (Answer) on June 12, 2009, denying the allegations in the Complaint.  Pursuant to the Pretrial Order entered on August 10, 2009, the trial was scheduled for November 24, 2009; however, on November 16, 2009, the parties filed a Joint Motion requesting that the trial be stricken and that all issues be resolved on stipulations and briefs.  An order to that effect was entered on November 17, 2009.

The facts and documents necessary for the resolution of this adversary proceeding are before the court through the Stipulation of Undisputed Facts and Exhibits (Joint Stipulations) filed by the parties on November 18, 2009, which includes the following exhibits:  (1)  a Deed of Trust executed by the Plaintiff and Defendant on September 21, 2004, in favor of Andrew Johnson Bank; (2)  a Marital Dissolution Agreement signed by the parties filed in the Circuit Court for Greene County, Tennessee, on January 25, 2005; (3)  a Final Judgment of Divorce entered in the Greene County Circuit Court on February 7, 2005; (4)  a Deed of Trust, Adjustable Rate Rider, and Adjustable Rate Note, executed by the Plaintiff and Defendant on March 28, 2008, in favor of Andrew Johnson Bank; and (5)  a Release of Deed of Trust dated May 20, 2008, releasing the September 21, 2004 Deed of Trust.

This is a core proceeding.  28 U.S.C. § 157(b)(2)(I) (2006).

**I**

The parties were divorced on February 7, 2005, under the terms of a Final Decree of Divorce (Divorce Decree) entered in the Circuit Court for Greene County, Tennessee in *Cooper v. Cooper*, Case No. 05CV059. JT. STIPS. at ¶ 3; STIP. EX. 3.[1] Incorporated verbatim within the Divorce Decree are the provisions of a Marital Dissolution Agreement executed by the parties and filed in the state court on January 25, 2005, setting forth their rights and duties concerning the division of marital property and marital debts, including, *inter alia*, their marital residence located at 935 Jennings Creek Road, Greeneville, Tennessee (Jennings Creek Road Property).[2] As material to this adversary proceeding, the Marital Dissolution Agreement and Divorce Decree provide:

> 3. <u>Realty</u>:
>
> The parties own real property consisting of a home at 935 Jenning Creek Road, Greeneville, TN 37743, the Wife shall be awarded sole possession and title to the home and husband hereby waives any interest in said property. Further, the wife shall be responsible to pay the debt owing on the home to her parents. Husband shall be responsible for the debt owing on the home to Andrew Johnson Bank that was undertaken to buy and or operate Shilo Market, specifically Husband is obligated to pay the monthly payment of $593.25 each month that is owed to Andrew Johnson Bank to purchase/operate Shilo Market. Husband shall continue to pay such debt until the lien on the parties' former marital home is satisfied. Moreover, wife waives any and all claim and interest in Shilo Market and is in no way responsible for the debts of or related to the operation of Shilo Market.

JT. STIPS. at ¶¶ 4-5; STIP. EXS. 2, 3 at ¶ 3. The lien of Andrew Johnson Bank encumbering the Jennings Creek Road Property referenced in the Marital Dissolution Agreement and Divorce Decree arose out of a loan to the Defendant in the original amount of $30,687.25, and is evidenced by a Deed

---

[1] Although the parties' Joint Stipulations list the date of divorce as January 25, 2005, the Final Judgment of Divorce was not entered by the Circuit Court Judge until February 7, 2005.

[2] This property is referred to in the two Deeds of Trust as "Jennings Creek Lane" and in the Marital Dissolution Agreement and Divorce Decree as "Jenning Creek Road." The court will refer to it as the Jennings Creek Road Property.

of Trust dated September 21, 2004, and recorded on September 28, 2004, with the Register of Deeds for Greene County, Tennessee, in Deed Book 370A, Page 1538. JT. STIPS. at ¶ 6; STIP. EX. 1.[3]

As referenced in the Marital Dissolution Agreement and Divorce Decree, the Defendant owned and operated Shilo Market, which was located at the Jearoldstown Exit of Interstate 81 in Greene County, and sold, among other things, gasoline, and food snacks. JT. STIPS. at ¶ 7. The Shilo Market suffered a continuous decline in business following September 11, 2001, and at some point, the Defendant became unable to meet his financial responsibilities under the Marital Dissolution Agreement and Divorce Decree, to pay child support, and/or to make payments on post-divorce debts incurred in the operation of Shilo Market. JT. STIPS. at ¶¶ 8-9. The Defendant advised the Plaintiff that he could no longer make the payments due to Andrew Johnson Bank; however, he arranged a new loan from Andrew Johnson Bank that would pay off the debt against the Plaintiff's house and provide him with additional sums to try and keep Shilo Market afloat. JT. STIPS. at ¶¶ 10-11. Because the Defendant had no collateral, the Plaintiff agreed to use as collateral the Jennings Creek Road Property[4] secured by the September 21, 2004 Deed of Trust, and on March 28, 2008, both parties executed an Adjustable Rate Note in the amount of $31,500.00, and a Deed of Trust was recorded with the Greene County Register of Deeds in Book 446A, Page 1707 on April 10, 2006. JT. STIPS. at ¶ 12-13; STIP. COLL. EX. 4. On May 19, 2008, Andrew Johnson Bank recorded a Release of Deed

---

[3] The parties did not include the note evidencing this indebtedness in the Joint Stipulations. However, the Deed of Trust clearly recites that "WHEREAS, Jeffrey Lee Cooper ('Borrower') is indebted to the [Andrew Johnson Bank]." Therefore, notwithstanding that the Plaintiff pledged her interest in the jointly-owned Jennings Creek Road Property to secure the September 21, 2004 loan, it is apparent that she was not an obligor on the note.

[4] At paragraph 12 of the Joint Stipulations, the parties identified the property as "935 James Creek Lane." Because the property descriptions in both the September 21, 2004, and March 28, 2008 Deeds of Trust are identical, the court concludes that the parties secured the March 28, 2008 loan with the Jennings Creek Road Property.

4

of Trust, releasing the September 21, 2004 Deed of Trust. JT. STIPS. at ¶ 14; STIP. EX. 5. The Release of Deed of Trust recites that the "entire indebtedness" associated with the $31,675.25 loan of September 21, 2004, to the Defendant had been satisfied.

The Defendant continued operating the Shilo Market until December 2008, when the landlord repossessed the market and its inventory, leaving the Defendant unemployed and unable to continue in business. JT. STIPS. at ¶ 15. Thereafter, on February 17, 2009, he filed the Voluntary Petition commencing his Chapter 7 bankruptcy case, listing the Plaintiff among his creditors. JT. STIPS. at ¶¶ 1-2. The Plaintiff filed the Complaint initiating this adversary proceeding on May 26, 2009, alleging that the Defendant has failed to meet his obligations under the Marital Dissolution Agreement and Divorce Decree by not paying the debt to Andrew Johnson Bank until the lien was satisfied and seeking a determination that the debt is nondischargeable. The Defendant filed his Answer on June 12, 2009, arguing that $11,378.75 was disbursed to Andrew Johnson Bank for the loan of September 21, 2004, and that the March 28, 2008 obligation constituted a new debt not covered by the Marital Dissolution Agreement and Divorce Decree.

## II

Nondischargeability of debts is governed by 11 U.S.C. § 523, which provides, in material part that "a discharge under section 727[5] . . . does not discharge an individual debtor from any debt . . . to a spouse, former spouse, or child of the debtor [that is] not [a domestic support obligation but]

---

[5] Chapter 7 debtors receive a discharge of pre-petition debts, "[e]xcept as provided in section 523 of this title[,]" 11 U.S.C. § 727(b) (2006), accomplishing a goal of Chapter 7 to relieve "honest but unfortunate" debtors of their debts and allow them a "fresh start" through this discharge. *Buckeye Retirement, LLC v. Heil (In re Heil)*, 289 B.R. 897, 901 (Bankr. E.D. Tenn. 2003) (quoting *In re Krohn*, 886 F.2d 123, 125 (6th Cir. 1989) (citing *Local Loan Co. v. Hunt*, 54 S. Ct. 695, 699 (1934))). The Defendant received a discharge of his dischargeable debts on June 30, 2009.

5

is incurred by the debtor in the course of a divorce or separation or in connection with a separation agreement, divorce decree or other order of a court of record . . .[is likewise nondischargeable]." 11 U.S.C. § 523(a)(15).[6] Along with § 523(a)(5), this subsection evidences a balance between the fresh start to be afforded an "honest but unfortunate debtor" and "the family law policy which recognizes the need of ensuring the necessary financial support for the disadvantaged spouse after the termination of the marriage[.]" *Loe, Warren, Rosenfield, Katcher, Hibbs, & Windsor, P.C. v. Brooks*, 371 B.R. 761, 766 (Bankr. N.D. Tex. 2007) (citing *Marrama v. Citizens Bank*, 127 S. Ct. 1105, 1107 (1991) and *Sateren v. Sateren (In re Sateren)*, 183 B.R. 576, 581 (Bankr. D.N.D. 1995)).

---

[6] "Domestic support obligation" defined by the Bankruptcy Code to mean

. . . a debt that accrues before, on, or after the date of the order for relief in a case under this title, including interest that accrues on that debt as provided under applicable nonbankruptcy law notwithstanding any other provision of this title, that is –

(A) owed to or recoverable by –

(i) a spouse, former spouse, or child of the debtor or such child's parent, legal guardian, or responsible relative; or

(ii) a governmental unit;

(B) in the nature of alimony, maintenance, or support (including assistance provided by a governmental unit) of such spouse, former spouse, or child of the debtor or such child's parent, without regard to whether such debt is expressly so designated;

(C) established or subject to establishment before, on, or after the date of the order for relief in a case under this title, by reason of applicable provisions of –

(i) a separation agreement, divorce decree, or property settlement agreement;

(ii) an order of a court of record; or

(iii) a determination made in accordance with applicable nonbankruptcy law by a governmental unit; and

(D) not assigned to a nongovernmental entity, unless that obligation is assigned voluntarily by the spouse, former spouse, child of the debtor, or such child's parent, legal guardian, or responsible relative for the purpose of collecting the debt.

11 U.S.C. § 101(14A) (2006).

Before the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 (BAPCPA), property settlements in divorce actions were not automatically nondischargeable, and if a debtor could prove either an inability to pay a debt incurred in connection with a divorce or separation or that discharge of the debt would result in a benefit that outweighed any detriment to the non-debtor former spouse, the debt would be discharged. Both of these affirmative defenses, however, were eliminated by BAPCPA, and, based upon the plain language of subsection (a)(15) as it now reads, divorce-related debts that are not in the nature of alimony, maintenance, or support but have been awarded in connection with a divorce or separation, including joint debts subject to hold harmless agreements, are nondischargeable, and it is immaterial whether it would be a hardship upon the debtor to pay them. *See, e.g., Tracy v. Tracy (In re Tracy)*, 2007 Bankr. LEXIS 360, at *6, 2007 WL 420252, at *2-3 (Bankr. D. Idaho Feb. 2, 2007) ("Section 523(a)(15) now provides, unqualifiedly, that a property settlement obligation encompassed by [§] 523(a)(15) is nondischargeable [and] . . . the distinction between a domestic support obligation and other types of obligations arising out of a marital relationship is of no practical consequence in determining the dischargeability of the debt.") (citing 4 COLLIER ON BANKRUPTCY ¶¶ 523-118 through 523-119). Post-BAPCPA, in order for a debt to be excepted from discharge under subsection (a)(15), the Plaintiff must provide evidence that "(1) the debt in question is to a spouse, former spouse or child of the debtor; (2) the debt is not a support obligation of the type described in § 523(a)(5); and (3) the obligation was incurred in a separation agreement, divorce decree or other order of a court of record." *Damschroeder v. Williams (In re Williams)*, 398 B.R. 464, 468 (Bankr. N.D. Ohio 2008). She also bears the burden of proof, by a preponderance of the evidence. *Grogan v. Garner*, 111 S. Ct. 654, 661 (1991).

Here, the aforementioned elements are met with respect to the September 21, 2004 obligation of the Defendant.  First, neither party argues that the obligation to Andrew Johnson Bank was a domestic support obligation, and the record confirms that fact.  The Marital Dissolution Agreement and Divorce Decree clearly identify it as a "debt owing on the home to Andrew Johnson Bank that was undertaken to buy and or operate Shilo Market, specifically . . . the monthly payment of $593.25 each month that is owed to Andrew Johnson Bank to purchase/operate Shilo Market."  STIP. EXS. 2, 3 at ¶ 3.  As to the other elements, courts have held that these types of debts, which may or may not be subject to hold harmless agreements, fall within the scope of § 523(a)(15) as being "a debt to a spouse, former spouse, or child of the debtor," notwithstanding that the payments are payable to a third party.  *Gibson v. Gibson (In re Gibson)*, 219 B.R. 195, 205 (B.A.P. 6th Cir. 1998).  Likewise, there is no dispute that the obligation to the Plaintiff arose pursuant to the Marital Dissolution Agreement and Divorce Decree of record in the Circuit Court for Greene County.  STIP. EXS. 2, 3.  Were applicability of § 523(a)(15) of the original September 21, 2004 note the sole issue, the inquiry would end.  However, the fundamental issue here is whether the Defendant's obligation to the Plaintiff to pay the September 21, 2004 debt to Andrew Johnson Bank incurred through the Marital Dissolution Agreement and Divorce Decree was satisfied when the March 28, 2008 loan was incurred.  Under Tennessee law, the answer to that query is yes because the March 28, 2008 transaction constituted a novation.

"A novation is the substitution of a new contract for an existing one . . . [which] extinguishes the existing contract."  *Pacific E. Corp. v. Gulf Life Holding Co.*, 902 S.W.2d 946, 958 (Tenn. Ct. App. 1995) (citations omitted).  "A novation will be found where the following essentials exist:  (1) a previous valid contract; (2) an agreement supported by evidence of intention; (3) extinguishment

of the old contract; and (4) a valid new contract." *Cumberland County Bank v. Eastman*, 2005 Tenn. App. LEXIS 533, at *10-11, 2005 WL 2043518, at *4 (Tenn. Ct. App. Aug. 25, 2005) (citations omitted). Whether the parties intended a novation may be determined through consideration of the following factors: (1) was new money advanced; (2) was there a change in the amount of monthly payments; (3) was a new security agreement introduced; and (4) was additional collateral provided to secure the creditor's security interest, with the presumption being that "the greater the degree of change in the obligation, the more likely a novation will be found." *In re McAllister*, 267 B.R. 614, 622 (Bankr. N.D. Iowa 2001).

As discussed, the parties have stipulated and the record establishes that on September 21, 2004, the Defendant, individually, executed a note to Andrew Johnson Bank in the principal amount of $30,687.25 which was secured by the parties' jointly-owned Jennings Creek Road Property.[7] The Plaintiff and Defendant were then divorced on January 25, 2005, and, by agreement, title to the Jennings Creek Road Property was vested solely in the Plaintiff, and the Defendant was to pay the indebtedness owed to Andrew Johnson Bank. Thereafter, on March 28, 2008, the Plaintiff and Defendant, as co-obligors, executed a new note in favor of Andrew Johnson Bank in the amount of $31,500.00, which allowed the Defendant to pay off the balance of the September 21, 2004 note and obtain additional funds to infuse into his business. Because he had no collateral, the Plaintiff agreed to secure the March 28, 2008 loan with the Jennings Creek Road Property. The September 21, 2004 loan was paid off, and the Deed of Trust securing that loan was released on May 19, 2008. Based upon these facts, the court finds that a novation occurred. Whereas the Defendant was the sole

---

[7] *See supra* n. 3.

9

obligor on the September 21, 2004 loan, both parties were obligors on the March 21, 2008 loan, which also provided a different monthly payment. Additionally, a new Deed of Trust was executed and recorded, evidencing that the September 21, 2004, and March 28, 2008 loans were unrelated. Although the March 28, 2008 Note is with the same creditor and utilizes the same real property as collateral as the September 21, 2004 note, it is a new note with the Plaintiff added as a co-obligor, secured by a new Deed of Trust, in a new amount, and it is clearly not a renewal of the September 21, 2004 note. The parties have additionally stipulated that the Defendant "went to Andrew Johnson Bank and sought a new loan which would pay off the debt owing against Lana Cooper's home, as well as provide him with additional sums of cash which he placed into the business to keep it afloat." JT. STIPS. at ¶ 11. Also, as previously discussed, the Release of Deed of Trust filed by Andrew Johnson Bank on May 20, 2004, which released the September 21, 2004 Deed of Trust, clearly recites that the "entire [$30,675.25] indebtedness" evidenced by the September 21, 2004 note had been paid.

As previously stated, the Marital Dissolution Agreement and Divorce Decree providing for the division of marital property and marital debts constitute contractual obligations between the Plaintiff and Defendant. *See Bruce v. Bruce*, 801 S.W.2d 102, 105 (Tenn. Ct. App. 1990) ("A property settlement agreement between a husband and wife is 'within the category of contracts and is to be looked upon and enforced as an agreement, and is to be construed as other contracts as respects its interpretation, its meaning and effect.'") (quoting *Matthews v. Matthews*, 148 S.W.2d 3, 11-12 (Tenn. Ct. App. 1940)). The requirements set forth in paragraph 3 of the Marital Dissolution Agreement and Divorce Decree are clear that the Defendant's obligation to the Plaintiff was to "be responsible for the debt owing on the home [at 935 Jennings Creek Road, Greeneville, Tennessee] to Andrew Johnson Bank that was undertaken to buy and or operate Shilo Market, specifically . . .

10

to pay the monthly payment of $593.25 each month that is owed to Andrew Johnson Bank to purchase/operate Shilo Market." STIP. EXS. 2, 3 at ¶ 3. Because the original September 21, 2004 note was paid in full and the September 21, 2004 Deed of Trust securing that note was released, the Defendant's obligation to the Plaintiff required under the Marital Dissolution Agreement and Divorce Decree was satisfied. The March 28, 2008 Adjustable Rate Note created a new obligation, for which the Plaintiff made the decision to allow the use of the Jennings Creek Road Property as collateral. The indebtedness incurred by the parties under the March 28, 2008 Adjustable Rate Note, secured by the March 28, 2008 Deed of Trust was not encompassed within the Marital Dissolution Agreement and Divorce Decree and cannot, therefore, be brought within the scope thereof for the purposes of nondischargeability under § 523(a)(15).

### III

The Plaintiff additionally seeks a determination of nondischargeability under § 523(a)(2)(A), which includes any debt "for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained, by . . . false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition[.]" Unlike subsection (a)(15), this subsection is construed liberally in favor of debtors and strictly against parties seeking a determination of nondischargeability, who again bear the burden of proving the necessary elements by a preponderance of the evidence. *Grogan*, 111 S. Ct. at 661; *Rembert v. AT&T Universal Card Services, Inc. (In re Rembert)*, 141 F.3d 277, 281 (6th Cir. 1998). In order to satisfy the requirements of § 523(a)(2)(A), the Plaintiff must prove that the Defendant obtained money, property, or services through material misrepresentations which he knew were false or were made with gross recklessness,

that the Defendant intended to deceive the Plaintiff, that she justifiably relied upon the Defendant's false representations, and that her reliance was the proximate cause of her loss. *Haney v. Copeland (In re Copeland)*, 291 B.R. 740, 760 (Bankr. E.D. Tenn. 2003) (quoting *Rembert*, 141 F.3d at 280).

The first element requires proof of the following: "(1) the debtor received money; (2) that was procured through material misrepresentations by the debtor to the creditor; and (3) at the time the debtor made the representations, he either knew that they were erroneous, or he was reckless in failing to determine their veracity." *Copeland*, 291 B.R. at 760. Accordingly, the Plaintiff must first prove that the Defendant received a financial benefit from the creditor, even if money not received directly from the creditor. *Copeland*, 291 B.R. at 761-62 (citing *Metcalfe v. Waters (In re Waters)*, 239 B.R. 893, 902 (Bankr. W.D. Tenn. 1999)). She must then prove that the Defendant made material misrepresentations or "substantial inaccuracies" and that he engaged in conduct which was "somewhat blameworthy." *Copeland*, 291 B.R. at 759, 761 (quoting *Candland v. Insurance Company of North America (In re Candland)*, 90 F.3d 1466, 1470 (9th Cir. 1996)).

> "[F]alse pretense" involves implied misrepresentation or conduct intended to create and foster a false impression, as distinguished from a "false representation" which is an express misrepresentation[, while a]ctual fraud "consists of any deceit, artifice, trick, or design involving direct and active operation of the mind, used to circumvent and cheat another - something said, done or omitted with the design of perpetrating what is known to be a cheat or deception."

*Copeland*, 291 B.R. at 760 (citations omitted). For the purposes of § 523(a)(2)(A), "false representations and pretenses encompass statements that falsely purport to depict current or past facts." *Peoples Security Finance Company, Inc. v. Todd (In re Todd)*, 34 B.R. 633, 635 (Bankr. W.D. Ky. 1983). On the other hand,

> a broken promise to repay a debt, without more, will not sustain a cause of action under § 523(a)(2)(A). Instead, central to the concept of fraud is the existence of

12

>scienter which, for the purposes of § 523(a)(2)(A), requires that it be shown that at the time the debt was incurred, there existed no intent on the part of the debtor to repay the obligation.

*EDM Mach. Sales, Inc. v. Harrison (In re Harrison)*, 301 B.R. 849, 854 (Bankr. N.D. Ohio 2003) (citations omitted).

Similarly, intent to deceive requires proof that the Defendant made false representations that he knew or should have known would convince the Plaintiff to encumber the Jennings Creek Road Property. "'Fraudulent intent requires an actual intent to mislead, which is more than mere negligence. . . . A 'dumb but honest' [debtor] does not satisfy the test.'" *Copeland*, 291 B.R. at 766 (quoting *Palmacci v. Umpierrez*, 121 F.3d 781, 788 (1st Cir. 1997)). It may be "inferred as a matter of fact" based on the totality of the circumstances by examining the Defendant's conduct to determine if he presented the Plaintiff with "'a picture of deceptive conduct . . . indicat[ing] an intent to deceive.'" *Copeland*, 291 B.R. at 766 (quoting *Wolf v. McGuire (In re McGuire)*, 284 B.R. 481, 492 (Bankr. D. Colo. 2002)). "As applied to § 523(a)(2)(A), 'the concept of misrepresentation includes a false representation as to one's intention, such as a promise to act. A representation of the maker's own intention to do … a particular thing is fraudulent if he does not have that intention' at the time he makes the representation.'" *Copeland*, 291 B.R. at 763 (quoting *Palmacci*, 121 F.3d at 786).

Finally, the Plaintiff must prove justifiable reliance; i.e., that she actually relied on the Defendant's representations and, based upon the facts and circumstances known to her at the time, her reliance was justifiable. *Copeland*, 291 B.R. at 767. Nevertheless, justifiable reliance can be found even if the Plaintiff might have discovered the falsity of the Defendant's representations had she investigated them further. *Copeland*, 291 B.R. at 767.

Here, the factual basis for the Plaintiff's § 523(a)(2)(A) nondischargeability claim, as argued by the Plaintiff's counsel in the Brief of Plaintiff filed on January 8, 2010, is as follows:

> When the Defendant asked the Plaintiff to further pledge her realty as collateral for the new loan, it was implied that the Defendant intended to satisfy the debt and have the lien released, and that the Defendant had the ability to repay the loan. Without question, by agreeing to further pledge her realty as collateral to the second loan, the Plaintiff justifiably relied upon the implied representations of the Defendant. The Plaintiff argues that the Defendant's implied representations were made with gross recklessness as to the truth of same. . . .
>
> There would have been no other reason for the Plaintiff to further pledge her realty as collateral for the Defendant's loan other than a justifiable reliance upon the implied representations of the Defendant. There was nothing for her to gain, and everything to lose, by further pledging her realty as collateral.
>
> Likewise, there can be no question about proximate cause. There would be no other factor than the Defendant's implied misrepresentations which would have contributed to the loss of the Plaintiff in either losing her collateral or paying the debt owed by the Defendant to Andrew Johnson Bank herself. The Plaintiff would have not pledged her collateral for the Defendant's loan otherwise.

PL.'S BRIEF at 3, 4.

Based upon the record before the court, the Plaintiff's claim under § 523(a)(2)(A) must fail because it is grounded solely on the argument stated above and is not supported by the record. Although she has sufficiently proved that the Defendant obtained money due to her authorizing the use of the Jennings Creek Road Property as collateral for the March 28, 2008 loan, the Plaintiff has not proved any of the other elements necessary for a determination of nondischargeability. The record is devoid of any evidence that the Defendant made any material misrepresentations to induce the Plaintiff to re-pledge the property, nor does it contain any evidence that he engaged in conduct that could be construed as fraudulent.

The parties have stipulated to the following facts: (1) that the Defendant became unable to meet his financial responsibilities under the Marital Dissolution Agreement and Divorce Decree and to make payments on his post-divorce debt; (2) that the Defendant incurred other post-divorce debts through his operation of Shilo Market; (3) that prior to March 28, 2008, the Defendant advised the Plaintiff that he could not make his payments; (4) that the Defendant had no collateral and the Plaintiff agreed to put up the Jennings Creek Road Property as collateral to secure the March 28, 2008 note; and (5) that the Defendant continued operating Shilo Market until December 2008, when he could no longer afford to go forward. None of these actions is fraudulent or constitute gross recklessness by the Defendant. Instead, the proof before the court evidences that the Defendant was trying to make Shilo Market profitable and that he arranged a loan with Andrew Johnson Bank for the purpose of obtaining cash to be put back into the business. He used the Jennings Creek Road Property as collateral, with the Plaintiff's consent, but, again, there is no evidence that he made any false promises or misrepresentations to her that induced her into doing so or that he never intended to repay the loan to Andrew Johnson Bank.[8] To the contrary, the record is clear: the Plaintiff and Defendant took out the March 28, 2008 loan in an attempt to allow the Defendant to continue operation of the Shilo Market and to pay off the original September 21, 2004 note. He continued operation of the business until December 2008, when he could no longer sustain it and the inventory was repossessed by the Defendant's landlord. These facts simply do not support the finding of a nondischargeable obligation in favor of the Plaintiff and against the Defendant under § 523(a)(2)(A).

**IV**

---

[8] The record, in fact, does not contain evidence of any dialogue between the parties leading up to the March 28, 2008 Loan other than that the Defendant advised the Plaintiff "that he could no longer make the payments that were due" on the September 21, 2004 Loan. JT. STIPS. at ¶ 10.

In summary, the Plaintiff has not met her burden of proof that the Defendant's obligations to her as incurred through the Marital Dissolution Agreement and Divorce Decree are nondischargeable under § 523(a)(15).  Additionally, the Plaintiff has not met her burden of proof that the Defendant owes her any obligation – whether incurred through the Marital Dissolution Agreement and Divorce Decree or by virtue of the March 28, 2008 Note and Deed of Trust with Andrew Johnson Bank – that is nondischargeable under § 523(a)(2)(A).

An order dismissing the Complaint will be entered.

FILED:  May 18, 2010

                                              BY THE COURT

                                              /s/  RICHARD STAIR, JR.

                                              RICHARD STAIR, JR.
                                              UNITED STATES BANKRUPTCY JUDGE